IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **Sara Sampra,** | ) | |
| Plaintiff, | ) | Case No: 16 C 4391 |
| | ) | |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| **Department of Transportation,** | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion for summary judgment [27] is granted. All pending motions are denied as moot. Civil case terminated.

## STATEMENT

Plaintiff Sara Sampra sues the Department of Transportation for interfering with her rights under the Family and Medical Leave Act of 1993 ("FMLA") after she took leave to care for her newborn baby.

**Facts**

From approximately October 2009 through April 2014, Sampra was employed as an engineer by the Federal Aviation Administration ("FAA"), an agency within the United States Department of Transportation ("DOT"). (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 30, ¶ 1.) Sampra remains employed by the FAA at the time of this suit. FAA engineers who are assigned to field work ("field engineers") typically do not work in an office; rather, they travel full time to the field, and are assigned to airports across the central portion of the U.S., including places like Minnesota, South Dakota, and Louisiana. (*Id*. ¶ 2.) The assignments for field engineers can last between one week and one year. (*Id*.) Sampra originally applied to work as a field engineer given that there were no office work engineering positions open at the time, and she was assigned field work at the time she was first hired to October 2010. (Id. ¶¶ 1, 3.)

From July 2010 until about January 13, 2014, Jenny Ross was Sampra's immediate supervisor. (*Id*. ¶ 4.) In October 2010, Ross assigned Sampra to do almost exclusively office work, managing the Technical Support Services Contract ("TSSC") work releases and providing oversight for the work completed under the TSSC. (*Id*. ¶¶ 1, 5.) This assignment involved monitoring work that was being performed by TSSC contractors in the field as well as performing work in the office. (*Id*. ¶ 5.) Ross's supervisor, John Smith, was not aware of the type of work Ross had assigned Sampra to do. (*Id*.) Though she was assigned projects that largely could be completed in the office, Sampra was still classified as a field engineer, and her job description continued to require up to 100% travel and fieldwork. (*Id*. ¶ 6.) Sampra contends, however, that there is not technically a position at the FAA entitled "field engineer," and that despite Defendant's contention that she was a field engineer, she was assigned to duties

for three and half years that required little to no field work. (*Id*. ¶ 7.)

Ross attests in an affidavit that Sampra avoided traveling to complete on-site checks of projects, and failed to attend in-person meetings even at O-Hare Airport, which is near the FAA office in Des Plaines. (Ross Decl., Def.'s Ex. 8, Dkt. # 29-2, ¶ 5.)[1]

From approximately December 23, 2013, through approximately January 3, 2014, Sampra worked from home after her doctor ordered bed rest because of a complication with her pregnancy. (*Id*. ¶ 9.) Ross approved her temporary request to telework while on bed rest. (*Id*.) On January 6, 2014, Sampra began FMLA leave in order for care for her newborn baby. (*Id*. ¶ 10.) Prior to going on FMLA leave, Sampra did not submit a written transition plan and did not make any written request to transition back to work through the use of telework. (*Id*. ¶ 11.)

On or about January 13, 2014, while Sampra was on FMLA leave, Ross moved to a new position and Matt Sibert took over as Sampra's direct supervisor. (*Id*. ¶ 12.) In January 2014, Sibert, who was located in Kansas City and was the Manager of the NAVIDS Construction/Installation Center became the Acting Manager of the Chicago Construction/Installation Center. (*Id*. ¶ 12.) On January 24, 2014, Sibert reassigned the task of overseeing the TSSC work releases to himself. (*Id*. ¶ 13.) Sibert oversaw the TSSC work releases in Kansas City and was able to perform the same task in Chicago in about an hour a week. (*Id*. ¶ 15.)

On February 7, 2014, Sampra emailed Sibert that she would be returning to work on March 10th. In the same email, she indicated that she "would like to take three months off to

---

[1] Although Ross indicates that she raised this issue in one of Sampra's performance evaluations, the cited portion of the evaluation regarding "Planning and Organization," quoted below, does not appear to support this assertion:

> Administrative tasks related to the TSSC contract are completed on time and are done thoroughly. Other administrative tasks like entering time into LDR system, completing required training, and completing written reports take a long time and are often late, although this has improved in the past year.
>
> Work on ORD RWY 10C/28C presented an opportunity to act as a project leader – maintaining schedules, monitoring day to day progress, and prioritizing assignments for installation work being done by Parsons through the TSSC contract. Instead, an arms length approach was taken and careful attention was paid to some aspects of the project including contractor invoicing and collecting red line drawings but not to work schedule and quality of the work performed.

(Ross Decl., Def.'s Ex. 8, Engineer Performance Appraisal, Ex. 1, Dkt. # 29-2, at 11, DOT 0464.)

take care of [her] newborn but since [she was] not being allowed to work from home [she could not] afford to." (*Id*. ¶ 16.) Prior to going on FMLA leave, Sampra had planned on taking eight weeks of leave and then teleworking for four weeks. (*Id*. ¶ 17.) On her planned return date of March 10, 2014, Sampra would have been on FMLA leave for nine weeks. (*Id*.) Pursuant to FAA policies, employees are not entitled to telework; an employee must request and be granted supervisory approval for teleworking, and telework is official duty time and is not to be used for any purpose other than official duties. (*Id*. ¶¶ 19-21.)

Sibert responded to Sampra's February 7, 2014 email by stating that telework was not authorized for Sampra to care for her baby. (*Id*. ¶ 18.) On February 18, 2014, Sampra emailed Sibert and told him she would not be caring for her child while on official time (*i.e.*, teleworking). (*Id*. ¶ 22.) If allowed to telework, Sampra did not plan on working full days, but rather to work "on and off" as she had availability. (*Id*. ¶ 23.) Sampra's FAA Telework Agreement stated that she was "not permitted to telework for partial days, unless the remainder of the day is accounted for by approved leave or approved duty status." (*Id*. ¶ 24.) If given permission to telework, Sampra was required to continue to work the same schedule she had previously worked. (*Id*.) Field employees are only permitted to telework on an ad hoc basis, meaning that they cannot be scheduled to telework. (*Id*. ¶ 25.)

On February 19, 2014, Sibert denied Sampra's request to telework, stating that he had no work to assign Sampra that could be performed while teleworking. (*Id*. ¶ 26.) Sampra returned to work on March 10, 2014. (*Id*. ¶ 27.) While Defendant asserts she still held a position as a field engineer, Sampra contends, for the reasons already stated, that she was never assigned to work as a "field engineer" between October 2010 and March 10, 2014. (*Id*.)

When Sampra was set to return to work, Sibert believed that overseeing the TSSC work releases was not appropriate work for a field engineer nor was it a full-time job. (*Id.* ¶ 28.) Sibert believed that because Sampra was a field engineer, she should be assigned to complete engineering work in the field, otherwise a contract worker would need to be hired to do the job she was supposed to do. (*Id*.)

On March 21, 2014, Sibert assigned Sampra to work on a project at O'Hare Airport in because it was local and would allow her to stay in the Chicago area, and thus would not be required to travel overnight. (*Id*. ¶¶ 29-30.) Later that day, Sampra told Sibert that it would be difficult if not impossible for her to find childcare while she worked the night hours required for the O'Hare project. (*Id*. ¶ 31.) To allow Sampra more time to arrange for child care, Sibert directed that Sampra work at O'Hare during daytime hours for the following two weeks, and then on April 2, 2014, extended her daytime assignment for another week. (*Id.*) Sampra never had to report to the nighttime assignment at O'Hare. (*Id*.)

During the time Sampra was an electrical engineer, all of the other field engineers in the Chicago office were assigned field work at airports across the central United States, and none was assigned to perform office work or manage TSSC work releases. (*Id*. ¶ 34.) Further, Sibert has always required that all field engineers under his supervision perform field work when it is

3

available and has never assigned a field engineer to manage TSSC work releases. (*Id.* ¶ 35.)

On March 10, 2014, Sampra submitted an Employee Request for Reassignment asking to be assigned to a drafting coordinator position, which had limited travel and regular work hours. (Id. ¶ 36.) Sampra's request was granted on April 11, 2014, and although she was reassigned to a lower pay band, she was allowed to retain the salary she made as an engineer. (*Id.* ¶ 37.) Sampra remains a drafting coordinator at the FAA. (*Id.* ¶ 38.)

**Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. *See* Fed. R. Civ. P. 56(c)(1)(A). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson*, 325 F.3d at 901. The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). The Court cannot weigh evidence or make credibility determinations on summary judgment. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

**Analysis**

"There are two types of FMLA claims, those for interference and those for retaliation." *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 443 (7th Cir. 2011). Specifically, the FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1). The FMLA also provides that it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).
In her Corrected First Amended Complaint, Plaintiff alleges that her reassignment after returning from maternity leave from primarily office work to a field work night shift position was in retaliation for having taken FMLA leave.

Defendant claims that Sampra waived her retaliation claim by not responding to Defendant's arguments regarding retaliation in its motion for summary judgment. The Court agrees. To the extent that Sampra's claim is based on an FMLA retaliation theory, it is waived. *Tank v. Deutsche Telekom, AG*, No. 11 C 4619, 2013 WL 1707954, at *10 (N.D. Ill. Apr. 19, 2013) ("Tank does not address this aspect of his IWPCA claim in his response [to the summary

judgment motion] . . . , thus the Court deems it waived.")

As to the interference claim, Defendant contends that it is also waived because Sampra did not raise it until her response to the motion for summary judgment, which is improper. It is true that a party generally may not amend her complaint in response to a summary judgment motion, see *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002), but at the same time, "plaintiffs are not required to plead legal theories." *Whitaker v. Milwaukee Cnty.WI*, 772 F.3d 802, 808 (7th Cir. 2014). Because "[b]oth interference and retaliation may be shown when an employer does not return an employee to an equivalent position upon returning from the FMLA leave," *Hillsman v. City of E. Chi.*, No. 2:16-CV-480, 2017 WL 1013214, at *3 (N.D. Ind. Feb. 22, 2017), and Sampra's claim rests on the same set of facts under either theory, the Court will consider the merits.

An FMLA interference claim requires a plaintiff to show that "(1) [s]he was eligible for the FMLA's protections, (2) h[er]employer was covered by the FMLA, (3) [s]he was entitled to leave under the FMLA, (4) [s]he provided sufficient notice of his intent to take leave, and (5) h[er] employer denied or interfered with . . . FMLA benefits to which he was entitled." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015) (internal citations and quotations omitted). Under 29 U.S.C. § 2614(a)(1), any employee who takes FMLA leave is "entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(B). According to Defendant, Sampra cannot show that she was denied any FMLA benefits because Defendant returned Sampra to the same engineer position after her FMLA leave that she had before her leave. Defendant goes on to assert that Sibert, her new boss, simply assigned her to work in the field as it was part of her job description and all other field engineers were required to do so as well.

Sampra's attempt to reframe Defendant's position (that Sampra was reinstated to the same position under § 2614(a)(1)) by asserting that she was not reinstated to an *equivalent* position under § 2614(a)(1)(B) is unavailing. Sampra admitted that she had been hired as a "field engineer." When asked at her deposition what position she had initially applied for at the FAA, she responded "[a] field engineering position." (Sampra Dep., Def.'s Ex. 2, Dkt. # 29-2, at 11.) In an affidavit submitted to the DOT in support of her claim of discrimination, Sampra stated that when hired she was "classified as a Field Engineer," (Sampra Supp. Rebuttal. Aff., Def.'s Ex. 7, at DOT 0183), and points to no evidence that her title changed either before or after her FMLA leave. Sampra states in her DOT affidavit that Ross "set a precedent when she assigned me office work in a project management/engineer capacity and not field engineer work." (*Id.* at DOT 0179.) But simply because Ross did not assign Sampra to the field does not mean that she could not have done so, and Sampra points to no evidence or authority supporting such a conclusion. Indeed, Sampra points to no evidence refuting Ross's statement that although "Sampra was performing work that could be completed mostly in the office, she was still classified as a field engineer and her job description continued to require up to 100% travel and field work during the entire period in which I was her supervisor." (Ross Decl., Def.'s Ex. 8,

5

Dkt. # 29-2, ¶ 4.)

Moreover, an employee returning from FMLA leave is entitled to "any right, benefit or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). Sibert, who became Sampra's supervisor while she was on FMLA leave, stated in his declaration that "[a]t no time ha[s] [he] ever allowed a field engineer under [his] supervision to perform mostly office work or to oversee TSSC work releases," and that "[e]xcept during periods in which there is insufficient field work available to be performed, [he] ha[s] always assigned all field engineers under [his] supervision to perform field work on location at airports." (Sibert Decl., Def.'s Ex. 16, Dkt. # 29-2, ¶¶ 3, 4.) In addition, when Sibert was asked at his deposition if Sampra had not been on leave when he became her manager, whether he would have "allowed her to keep doing the TSSC work releases instead of going into the field," he responded, "I would not have." (Sibert Dep. Def.'s Ex. 3, Dkt. # 29-2, at 53.) Sampra has pointed to no evidence rebutting this testimony and thus has not shown that, upon her return from FMLA, she failed to receive a benefit or position to which she would have been entitled had she not taken the leave. In other words, Sampra fails to create any genuine issue of material fact that when Sibert became her supervisor in early January 2014, she would have been able to continue doing only office engineering work even if she had not taken FMLA leave.

**Conclusion**

For the reasons stated above, Defendant's motion for summary judgment [27] is granted. Any pending motions are terminated as moot. Civil case terminated.

**Date**: June 14, 2017

_____
**Ronald A. Guzmán**
**United States District Judge**